UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK, <br><br> Plaintiffs, <br><br> -against- <br><br> ALITE FLOORING, LLC and ALITE FLOOR LLC, <br><br> Defendants. | 22 CV <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs, by their attorneys, Virginia & Ambinder, LLP, allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action brought pursuant to Sections 502(a)(3), and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), and 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, by multiemployer employee-benefit funds, through their respective Boards of Trustees, to collect delinquent employer contributions and related relief.

## JURISDICTION AND VENUE

2.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, Section 301 of the LMRA, 29 U.S.C. § 185, and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.     Venue is proper in this judicial district pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) because Plaintiffs reside in this district.

## THE PARTIES

4.     Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, and Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA.  The ERISA Funds are organized and operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3).  The Trustees are fiduciaries of the ERISA Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5.     Plaintiffs Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6.     Plaintiff Carpenter Contractor Alliance of Metropolitan New York, formerly known as the New York City and Vicinity Carpenters Labor-Management Corporation (together with the Charity Fund and the ERISA Funds, referred to herein as the "Funds") is a not-for-profit organization established under Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that maintains its principal place of business at 245 Fifth Avenue, New York, New York 10016.

7.      Defendant Alite Flooring LLC ("Alite") is a limited liability company organized under the laws of the State of New Jersey, conducting business in the construction industry in the State of New York.  At relevant times, Defendant Alite was, and is, an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142.  Defendant Alite maintains its principal place of business at 45 Route 46 East, Suite 604, Pine Brook, NJ 07058.

8.      Defendant Alite Floor, LLC ("Alite Floor") is a limited liability company organized under the laws of the State of New Jersey, conducting business in the construction industry in the State of New York.  At relevant times, Defendant Alite Floor was, and is, an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142.  Defendant Alite Floor maintains its principal place of business at 100 ENGLE ROCK AVENUE, SUITE 110, EAST HANOVER, NEW JERSEY 07936.

## FACTUAL ALLEGATIONS

### Alite's Collective Bargaining Agreement

9.      At relevant times, Alite was a party to, or manifested an intention to be bound by, a collective bargaining agreement (the "CBA") with the New York City District Council Carpenters f/k/a District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union").

10.     The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. § 142.

11.     The CBA required Defendant Alite, *inter alia*, to remit specified hourly benefit contributions to the Funds in connection with all work performed within the trade and geographical jurisdiction of the Union ("Covered Work").

12.     The CBA and the documents and instruments governing the Funds also required Alite to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.

13.     Pursuant to the CBA and the documents and instruments governing the Funds, an employer is liable for all delinquent contributions, plus interest thereon at the rate of the prime rate of Citibank plus 2%, liquidated damages equal to 20% of the delinquent contributions, audit costs, and all reasonable attorneys' fees and costs incurred by the Funds in relation to this action.

14.     Pursuant to the CBA and the documents and instruments governing the Funds, if an employer fails to timely remit benefit contributions, the Funds may assess late payment interest against the employer from the date of the delinquency through the date of payment.

**The 2016-2019 Payroll Audit of Alite**

15.     Pursuant to the CBA and the documents and instruments governing the Funds, the Funds conducted payroll audit of Alite covering the period of July 19, 2016 through March 24, 2019 (the "2016-2019 Audit").

16.     The 2016-19 Audit revealed that Alite had failed to make all required contributions to the Funds for Covered Work in the principal amount of $90,713.38.

17.     To date, Alite has failed to pay any of the delinquent contributions identified in the 2016-19 Audit or any of the damages to which the Funds are entitled in connection with such a delinquency, including interest, liquidated damages, audit costs, and attorneys' fees and costs.

**The 2019-Present Payroll Audit of Alite**

18.     Pursuant to the CBA and the documents and instruments governing the Funds, the Funds initiated a payroll audit of Alite covering the period of March 25, 2019 through the present.

19.     Under the CBA and the documents and instruments governing the Funds, if Alite refused to furnish the Funds with its books and records for the purpose of conducting an audit, then the Funds are entitled to issue an estimated audit of Alite based on its previously reported data, the findings of which are presumptive evidence of a delinquency under the terms of the documents and instruments governing the Funds.

20.     Alite failed to furnish its books and records or otherwise comply with the requests for an audit covering the period March 25, 2019 through the present.

21.     Accordingly, the Funds issued an estimated audit of Alite covering the period March 25, 2019 through the present containing an estimated principal deficiency of $3,943,586.38.

**Alite and Alite Floor are Alter Egos, Single Employers, and/or Successor Entities**

22.     At all relevant times, Defendant Alite Floor was and is the alter egos and/or successor of Alite and vice versa, as Defendants have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

23.     At all relevant times, Defendants Alite and Alite Floor (together, "Defendants") operated as a single, integrated employer, with interrelation of operations, common management, centralized control of labor relations, common ownership, and common facilities and equipment.

24.     At relevant times, Defendants have shared a common owner; namely, Michael Malgier and Charles Byrne.

25.     At relevant times, Defendants shared common officers including Charles Byrne, who was the CEO of Alite Floor and vice president of Alite.

26.     At relevant times, Defendants were and continue to be operated by Michael Malgieri.

27.     At relevant times, Defendants have shared common addresses: (1) 45 Route 46 East, Suite 604, Pine Brook, New Jersey 07058 and (2) 100 Engle Rock Avenue, Suite 110, East Hanover, New Jersey 07936.

28.     At all relevant times, Defendants were engaged in the same type of work, with all entities primarily performing commercial flooring and other floor covering related work.

29.     Defendants have performed work on the same projects and/or shared the same customers, including but not limited to a project at 85 Jay Street, Brooklyn, NY.

30.     Upon information and belief, Defendants have at relevant times shared employees.

31.     At relevant times, Defendants have shared a common operation and intermingled funds.  Upon information and belief, employees of Alite were paid by Alite Floor in connection with work performed on behalf of Alite.

32.     Accordingly, Defendants failed to follow ordinary corporate formalities, and there was never an arm's-length relationship between them.

33.     Alite used Alite Floor for the purpose of avoiding Alite's contractual and statutory obligations to the Funds by having Alite Floor perform and/or pay for Covered Work without conforming to the terms of the CBAs.

34.     Upon information and belief, Alite created or maintained Alite Floors in order to perpetrate a fraud against the Funds and avoid its obligations to the Funds under the CBA.

35.     Upon information and belief, Alite Floor had prior notice of Alite's debts and obligations to the Funds, given the companies' common ownership and operations.

36.    As an alter ego and/or successor of and single employers with Alite, Alite Floor is subject to the terms of Alite's CBAs, and each is liable for each other's debts and unpaid contributions to the Funds, including the findings of the 2016-19 Audit and all delinquent contributions and other associated liquidated damages, interest, attorneys' fees, and costs revealed by any ongoing or future audit, or otherwise found to be due and owing to the Funds during the course of this litigation.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF AGAINST ALITE
### (Liability for Delinquent Contributions/Violations of the CBA)

37.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38.    Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."

39.    Section 301 of the LMRA authorizes Plaintiffs, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

40.    At relevant times, Alite was a party to or otherwise bound by the CBA.

41.    The CBA and the documents and instruments governing the Funds required Alite to make specified hourly contributions to the Funds in connection with all Covered Work performed and to submit to and comply with periodic payroll audits when requested by the Funds.

42.    The 2016-19 Audit revealed that Alite failed to make all required contributions to the Funds in connection with Covered Work it performed during the 2016-19 Audit period in the amount of $90,713.38.

43.     Alite violated the CBA when it failed to remit contributions for all work it performed within the trade and geographical jurisdiction of the CBA as revealed by the 2016-19 Audit.

44.     Alite further violated the CBA when it failed to submit to an audit of its books and records for the period March 25, 2019 through the present.  As a result, the Funds issued an estimated audit of Alite covering the period March 25, 2019 through the present containing an estimated principal deficiency of $3,943,586.38.

45.     Pursuant to sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, section 301 of the LMRA, 29 U.S.C. § 185, the CBA, and the documents and instruments governing the Funds, Plaintiffs are entitled to an order finding that Alite is liable for delinquent contributions identified in the 2016-19 Audit in the amount of $90,713.38 and is liable for delinquent contributions identified in the estimated audit covering March 25, 2019 to the present of $3,943,586.38, plus interest, liquidated damages, audit costs and attorneys' fees, and any additional delinquent benefit contributions identified during the course of this litigation, plus corresponding interest, liquidated damages, audit costs, and attorneys' fees and costs.

## THE FUNDS' SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Injunctive Relief Regarding Alter Ego/Successor and Single Employer Status)

46.     The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47.     Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E), provides that, in actions to collect delinquent contributions, the Funds may be awarded "such other legal or equitable relief as the court deems appropriate."

48.     Section 301 of the LMRA, 29 U.S.C. § 185 provides for the issuance of an injunction to enforce a collective bargaining agreement.

49.     At all relevant times, Alite Floor was the alter ego and/or successors of, and a single employer with, Alite and is therefore bound to Alite's CBA.

50.     This means, among other things, that Alite Floor is required to follow the terms of Alite's CBA, including the provision that they remit contributions to the Funds, submit to audits by the Funds, and to provide remittance reports to the Funds detailing the hours of Covered Work performed.

51.     Accordingly, the Funds seek an order finding that Alite Floor is the alter ego and/or successor of, and a single employer with, Alite and therefore bound to the CBA for the same time period and to the same extent as Alite.

52.     Absent such injunctive relief, the Funds would be irreparably injured insofar as they would have no viable way of determining whether Alite Floor performed Covered Work for which contributions are required and would be forced to file successive alter ego lawsuits every time they wished to have Alite Floor comply with even the most basic requirements of the CBA.

## PLAINTIFFS' THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Alter Ego, Successor, and Single Employer Liability for Delinquent Contributions/Violation of the CBA)

53.     The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54.     At relevant times, Defendants were alter egos/successors of each other and had substantially identical management, business purpose, operations, equipment, customers, supervision, and ownership.

55.     At all relevant times, Defendants operated as a single, integrated employer, with interrelation of operations, common management, centralized control of labor relations, common ownership, and common facilities and equipment.

56.     By virtue of their status as alter egos/successors/single employers, Alite and Alite Floor are, and at all relevant times have been, bound by the CBA.

57.     Alite and Alite Floor violated the CBA's terms when they failed to remit contributions in connection with the work they performed within the scope and jurisdiction of the CBA and when they failed to submit to an audit of their books and records as required by the CBA.

58.     By virtue of their status as alter egos/successors/single employers, Alite and Alite Floor are jointly and severally liable for their obligations under the CBA, including the 2016-19 Audit and the estimated audit findings covering March 25, 2019 through the present in the amount of $3,943,586.38, plus the findings of any audit of Alite Floor's books and records.

59.     Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, the Funds' Collection Policy, and the documents and instruments governing the Funds, the Funds are entitled to an order, based on Defendants' alter ego/single employer/successor status: (1) directing Defendant Alite Floor to submit to an audit of its books and records covering the period January 18, 2016 to the present; (2) directing Defendants to pay all delinquent contributions and other associated liquidated damages, interest, attorneys' fees, and costs revealed by an audit of any of the Defendants or otherwise found to be due and owing by any of the Defendants to the Funds during the course of this litigation; (3) directing Defendants to pay all delinquent contributions contained in the 2016-19 Audit of Alite, plus all associated interest, liquidated damages, attorneys' fees and audit costs; and (4) directing Defendants to pay all delinquent contributions contained in the estimated audit covering March 25, 2019 through the present, plus all associated interest, liquidated damages, attorneys' fees and audit costs.

60.     Absent an audit, the Funds have no ascertainable method of determining the amount of delinquencies due and owing for work that Alite Floor has performed within the scope of the CBA.

61.     As unadjudicated alter egos/successors/single employers, the Funds have no feasible method of requiring Alite Floor to submit to such audits to determine their outstanding delinquencies.

62.     Accordingly, a court order finding that Alite Floor is the alter ego/successor of, and/or a single employer with, Alite, and thus compelling Alite Floor to submit to an audit, is necessary for the Funds to recover delinquencies due and owing by Alite Floor.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Funds demand trial by jury in this action of all issues so triable.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1) On the Funds' First Claim for Relief: (a) finding Alite liable for delinquent contributions identified in the 2016-19 Audit in the amount of $90,713.38, plus interest, liquidated damages, audit costs and attorneys' fees, (b) finding Alite liable for delinquent contributions identified in the estimated audit covering March 25, 2019 to the present of $3,943,586.38, plus interest, liquidated damages, audit costs and attorneys' fees; and (c) finding Alite liable for any additional delinquent benefit contributions identified during the course of this litigation, plus corresponding interest, liquidated damages, audit costs, and attorneys' fees and costs;

2) On the Funds' Second Claim for Relief: (a) issuing an order finding that Alite Floor is bound to the CBA for the same time period and to the same extent as Alite and

(b) are thus jointly and severally liable for each others' obligations under the CBA;

3) On the Funds' Third Claim for Relief: (a) finding that Alite Floor is the alter ego/successor of Alite; (b) finding that Alite Floor is a single employer with Alite; (c) directing Defendant Alite Floor to submit to an audit of its books and records covering the period January 18, 2016 to the present; (d) directing Defendants to pay all delinquent contributions and other associated liquidated damages, interest, attorneys' fees, and costs revealed by an audit of any of the Defendants or otherwise found to be due and owing by any of the Defendants to the Funds during the course of this litigation; (e) directing Defendants to pay all delinquent contributions contained in the 2016-19 Audit of Alite, plus all associated interest, liquidated damages, attorneys' fees and audit costs; and (f) directing Defendants to pay all delinquent contributions contained in the estimated audit covering March 25, 2019 through the present, plus all associated interest, liquidated damages, attorneys' fees and audit costs; (g) ordering Defendants to pay any other fees and costs incurred during the course of this litigation;

4) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     January 20, 2022                  Respectfully submitted,

                                      VIRGINIA & AMBINDER LLP

By:     */s/Nicole Marimon*
          Charles R. Virginia, Esq.
          Nicole Marimon, Esq.
          40 Broad Street, 7th Floor
          New York, New York 10004
          (212) 943-9080
          nmarimon@vandallp.com