UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TRUSTEES OF THE NEW YORK DISTRICT
COUNCIL OF CARPENTERS PENSION
FUND, et al.,

                    Plaintiffs,                     22-cv-522 (PKC)

      -against-                         ORDER

ALITE FLOORING, LLC and ALITE FLOOR
LLC,

                    Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

           Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprentice, Journeyman Retraining, Education and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund and The Carpenter Contractor Alliance of Metropolitan New York (collectively, the "Funds") move for the entry of default judgment against defendants Alite Flooring, LLC ("Alite") and Alite Floor LLC ("Alite Floor").

           According to the First Amended Complaint (the "Complaint"), Alite entered into successive collective bargaining agreements ("CBAs") that required it to remit hourly benefit contributions, furnish its books and records for audits, and pay interest on any delinquent contributions.  (Compl't ¶¶ 9, 11-14.)  The Funds assert that payroll audits have revealed that Alite owes $90,713.38 on delinquent contributions for a period from 2016 to 2019, and, separately, $3,943,586.38 for delinquent contributions from March 25, 2019 through present,

plus interest, audit costs and a delinquency assessment.  (Compl't ¶¶ 17, 22.)  The Funds seek judgment in the total amount of $5,307,891.64.

Counts One and Two bring claims under ERISA and the LMRA.  (Compl't ¶¶ 38-54.)  Counts Three and Four seek an Order finding that Alite Floor is the alter ego or successor in interest of Alite, and an Order directing Alite Floor to submit to an audit and to pay the delinquent contributions owed by Alite.  (Compl't ¶¶ 23-37, 55-71.)

This action was commenced on January 20, 2022.  (Docket # 1.)  An affidavit of service reflects that the Funds served the summons and Amended Complaint on Alite through the Corporate Division of the New York State Department of State on January 26, 2022.  (Docket # 10.)  A separate affidavit of service reflects that the Funds served the summons and Amended Complaint on Alite Floor by hand at its business address, and that service was accepted by Michelle Clemente, who is identified as Alite Floor's general agent.  (Docket # 9.)

Defendants have not answered or appeared.  On March 29, 2022, the Clerk issued a Certificate of Default against Alite and Alite Floor.  (Docket # 16.)  The Funds filed their motion for default judgment on May 24, 2022.  (Docket # 18.)  Defendants have not responded.

"[A] default is an admission of all well-pleaded allegations against the defaulting party."  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) (quotation marks omitted).  ERISA requires the payment of employer contributions to a multiemployer plan in accordance with the terms and conditions of a collective bargaining agreement.  29 U.S.C. § 1145.  The LMRA provides for a right of action for the violation of a contract between an employer and a labor organization representing employees.  29 U.S.C. § 185(a).

In support of their motion, the Funds have submitted a declaration from William Davidian, who has the title of Employer Services Director at the plaintiff Funds.  (Docket # 19.)

He annexes CBAs entered into between Alite and the New York City District Council of

Carpenters and between Alite and the United Brotherhood of Carpenters and Joiners, and points

to provisions requiring Alite to make specified hourly contributions to the Funds.  (Id. ¶ 11 &

Exs. A-F.)  Davidian states that an audit covering the period from July 19, 2016 through March

24, 2019 revealed that Alite had failed to make required contributions to the Funds totaling

$90,713.30, and that Alite also owed interest, audit costs and liquidated damages.  (Id. ¶ 20 &

Ex. H.)

        If an employer refuses to permit an audit of its contributions, the parties agreed to

a process whereby the Funds estimate the employer's delinquent contributions.  (Davidian Dec.

Ex. F Sec. IV ¶ 12.)  The estimate is "based on the assumption that the employer's weekly hours

subject to contributions for each week of the requested audit period are the highest number of

average hours reported per week for any period of four consecutive weeks during the audit

period."  (Id.)  That estimate is treated as a presumptive delinquency.  (Id.)  When the Funds

attempted to conduct an audit of Alite for the period of March 25, 2019 through present, Alite

did not comply, and the Funds exercised their contractual right to perform an estimated audit,

concluding that there was a presumptive delinquency of $3,943,586.38.  (Davidian Dec. ¶¶ 24,

25, 27, 33; Compl't ¶¶ 21, 22.)  In a letter to Alite dated December 14, 2021, the Funds stated

that Alite had not complied with the audit requirements of the CBA, stated that their estimated

audit calculated a delinquency of $3,943,586.38, and advised Alite that legal proceedings may be

brought if Alite did not comply with the audit requirement.  (Davidian Dec. Ex. M.)

        The Funds have submitted documentation for the audits covering 2016 to 2019

and the estimated audit covering 2019 through 2021.  (Davidian Dec. Exs. H, L.)  They also have

submitted documentation reflecting interest calculations through May 19, 2022.  (Id. Ex. I.)

- 3 -

For the purposes of the default motion, the Funds have demonstrated liability as to the ERISA claim in Count One and the LMRA claim in Count Two and damages in the amount of $5,307,891.64.  Specifically, they have demonstrated that the CBAs required Alite to make contributions to the Funds, and that the audit for the period of July 19, 2016 through March 24, 2019 concluded that Alite owed $90,713.30 in contributions.  The Funds also have demonstrated that Alite did not comply with the audit demand for the period of March 25, 2019 through present, and that the Funds estimated Alite's delinquent contributions totaled $3,943,586.38.  In addition, the Funds have demonstrated that, pursuant to the CBAs and the Revised Statement of Policy for Collection of Employer Contributions, they are entitled to interest on delinquent contributions at the prime rate of Citibank plus 2%, liquidated damages equal to 20% of the delinquent contributions, audit costs, and reasonable attorneys' fees and costs.  (Davidian Dec. Ex. B, Art XV § 6; Ex. E, Art XV § 6; Ex. F § V.)  For the audit of 2016-2019, Alite owes interest totaling $25,238.91, audit costs of $28,272 and liquidated damages of $18,142.68.  (Id. Exs. H, I.)  For the audit of 2019 through present, Alite owes interest totaling $410,427.31 and liquidated damages of $788,717.27.  (Id. Ex. N.)  On the audit of 2016-2019, Alite also owes $2,793.70 in late-payment interest.  (Id. Ex. G.)

Lastly, the CBAs and the Collection Policy entered into by the parties provides that Alite will pay the Funds' reasonable attorneys' fees and costs.  (Id. Ex. B Art. XV § 6(a)(4); Ex. E Art. XV § 6(a)(4); Ex. F § V.)  The Funds' attorneys' fees and costs total $6,502.42.  (Harras Dec. ¶¶ 24-31 & Ex. S.)  The fees and costs have been documented and are reasonable.

Count Three seeks an Order finding that Alite Floor is the alter ego and/or successor of, and a single employer with, Alite.  (Compl't ¶¶ 55-61.)  Count Four seeks an Order directing Alite Floor to submit to an audit, as well as directing that, based on their single-

employer status, the payment of all delinquent contributions and associated liquidated damages, interest and fees by both defendants.  (Id. ¶¶ 62-71.)

Under ERISA and the LMRA, "[o]ne effect of the alter ego doctrine is to provide an analytical hook to bind a non-signatory to a collective bargaining agreement." Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (quotation marks and alteration omitted).  "The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws through a sham transaction or technical change in operations." Id. (quotation marks omitted).  "To protect employee benefits, courts observe a general federal policy of piercing the corporate veil when necessary." Id. (quotation marks omitted).  "The test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case, while recognizing that the following factors are important: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Id. (quotation marks and alteration omitted).

The Complaint alleges that Charles Byrne is the CEO of Alite Floor and vice president of Alite.  (Compl't ¶ 26.)  It alleges that both defendants are "operated by" Michael Malgieri and that they share common addresses in Pine Brook, New Jersey and East Hanover, New Jersey.  (Compl't ¶¶ 27-28.)  It alleges that the defendants engage in the same type of work, that they work on the same projects and share the same customers, including a project at 85 Jay Street in Brooklyn.  (Compl't ¶¶ 29-30.)  It alleges that they share employees and intermingle funds, and that employees of Alite have been paid by Alite Floor for their work on behalf of Alite.  (Compl't ¶¶ 31-32.)  It alleges, upon information and belief, that Alite Floor had notice of Alite's obligations to the Funds based on their common ownership and operations, and alleges

upon information and belief that Alite formed Alite Floors in order to avoid its obligations to the Funds.  (Compl't ¶¶ 35, 36.)

As noted, the defendants' default acts as an admission of all well-pleaded allegations against them.  D.H. Blair & Co., 462 F.3d at 107.  The Complaint alleges facts that, if true, would demonstrate that Alite Floor is the alter ego of Alite.  The motion for default judgment will therefore be entered on Counts Three and Four.

CONCLUSION.

The motion for default judgment is GRANTED.  (Docket # 18.)  The Clerk is directed to terminate the motion and to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
         June 14, 2022