UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TRUSTEES OF THE NEW YORK DISTRICT
COUNCIL OF CARPENTERS PENSION
FUND, et al.,

                        Plaintiffs,                                22-cv-522 (PKC)

        -against-                                                  ORDER


ALITE FLOORING, LLC and ALITE FLOOR
LLC,

                        Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendants Alite Flooring, LLC ("Alite") and Alite Floor LLC ("Alite Floor")

move to vacate the default judgment that was entered against them in the amount of

$5,307,891.64 on June 14, 2022.  Rule 55(c) & 60(b), Fed. R. Civ. P.  The plaintiff Funds oppose

the motion.  In support of the motion, defendants have come forward with a showing that the

default was not willful, have identified and documented potentially meritorious defenses, and

made a showing that vacatur of the default would not unfairly prejudice the plaintiff Funds.  The

motion to vacate will therefore be granted.

        A decision on a motion for default judgment is left to the sound discretion of the

court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  "[I]n ruling on a motion to

vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from

the judgment in order to ensure that to the extent possible, disputes are resolved on their merits."

New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).

Courts must determine whether a defendant has demonstrated "good cause" for the default.  See Weifang Xinli Plastic Prod. Co. v. JBM Trading Inc., 553 Fed. App'x 42, 43 (2d Cir. 2014) (summary order); Rule 55(c).  The good-cause analysis is guided by three factors: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013).  Willfulness means conduct that is "egregious and . . . not satisfactorily explained" and requires a showing of more than "merely negligent or careless" conduct.  Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (per curiam).  The moving party has the burden of showing an absence of prejudice, and "delay [in the litigation] alone is not a sufficient basis for establishing prejudice."  Green, 420 F.3d at 110.  As to meritorious defenses, the movant must "present some evidence beyond conclusory denials to support his defense.  The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  Enron, 10 F.3d at 98 (internal citation omitted).

Familiarity is assumed with the Order granting the Funds' motion for entry of default judgment.  (Docket # 26.)  On June 14, 2022, judgment was entered jointly and severally against Alite and Alite Floor in the amount of $5,307,891.64, plus $6,502.42 in attorneys' fees and costs.  (Docket # 27.)  The amount of the judgment reflects Alite's delinquent hourly benefit contributions to the Funds, and Alite Floor's liability was premised on its alleged status as an alter ego of Alite.  (Docket # 26.)  As discussed in the Order, the amounts owed were calculated pursuant to an estimated audit conducted by the Funds.  (Docket # 26 at 3-4.)  The Judgment also

directs Alite Floor to submit books and records to the Funds for an audit covering the relevant period.  (Docket # 27.)

Approximately two months after the entry of judgment, on August 10, 2022, a notice of appearance was filed on behalf of Alite and Alite Floor.  (Docket # 29.)  On August 17, 2022, Alite and Alite Floor filed a motion to vacate the default judgment and an amended motion later that same day.[1]  (Docket # 30, 35.)  Defendants' motion annexes a proposed Answer, as well as correspondence in which the Funds declined to consent to vacatur of the default judgment.  (Docket # 32-2, -3.)

In support of the motion to vacate, Alite and Alite Floor submit a declaration from Michael Malgieri, who describes himself as the sole owner of Alite.  (Docket # 31.)  Malgieri recounts the August 2021 death of Alite's former co-owner, as well as the sudden deaths of three senior employees, all of which occurred between October 2020 and December 2021.  (Malgieri Dec. ¶¶ 4-15, 17.)  Malgieri asserts that Alite's deceased former co-owner had been responsible for working with employee-benefit funds and union-related issues.  (Malgieri Reply Dec. ¶ 41.)

This action was commenced on January 20, 2022.  (Docket # 1.)  Malgieri describes a family tragedy of February 2022, which roughly coincided with his own brief hospitalization for Covid-19.  (Malgieri Dec. ¶¶ 18, 20-21.)  Malgieri states: "Admittedly, the passing of my partner, several key employees and one of my twin daughters has significantly impacted my performance at work."  (Id. ¶ 62.)  "I respectfully submit that the default in this case was not willful, at worst, it was a result of my personal tragedies, ill health, inadvertence, and mistake."  (Id. ¶ 63.)

---

[1] The amended motion corrects a typographical error in the original notice of motion.

Malgieri states that, at some point after May 25, 2022, he received a call from Alite's accountant, who read aloud to him a mailing that he misunderstood to be from the New York City District Council of Carpenters (the "Union").  (Id. ¶ 22.)  In connection with a prior arbitration proceeding, Alite had agreed to pay $175,000 to the Union to resolve certain grievances.  (Malgieri Dec. Ex. 1.)  Malgieri states that he incorrectly believed that the mailing was "just paperwork referencing the prior settlement agreement" and did not understand "that my accountant was reading the lawsuit . . . ."  (Id. ¶¶ 22, 24.)  He states that on approximately August 9, 2022, he first "realized" the existence of this litigation and understood that it was separate and distinct from the previous settlement with the Union.  (Id. ¶ 25.)

In opposition to vacatur, the Funds note that Malgieri is not being sued individually and that his personal struggles do not explain defendants' failure to appear, given that records indicate Alite has been continuously doing business since the commencement of this action.  (Opp. Mem. at 8-11.)  But there is no indication that defendants "defaulted deliberately," as can by shown through "a clear pattern of willful and deliberate disregard for the litigation." Bricklayers & Allied Craftworkers, 779 F.3d at 187.  Malgieri, who apparently is a non-lawyer, has described confusion about the contents of the Complaint when it was read over the phone by an accountant, and acknowledges his mistaken impression that the document related to a resolved dispute with the Union.  Malgieri's declaration also describes a leadership vacuum within Alite after the death of the firm's co-owner and other senior employees, which may explain why an accountant had possession of the Complaint.  The declaration adequately explains why defendants' failure to appear or respond was a product of negligence and inattention but was not egregious or willful.  See id. at 186.

- 4 -

The Funds also urge that defendants have not identified a meritorious defense.  "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense.  The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  <u>Enron</u>, 10 F.3d at 98 (internal citation omitted).  Defendants assert that the Funds did not demonstrate in their motion that Alite is bound to a collective bargaining agreement covering the period from 2017 through 2024, and Malgieri states that he has been unable to locate such an agreement and does not recall signing one.  (Malgieri Reply Dec. ¶¶ 12-13.)  Malgieri observes that some of the CBAs submitted by the Funds in connection with their default motion are unsigned.  (<u>Id.</u> ¶¶ 14; Malgieri Dec. ¶ 33.)  He points to claimed flaws in the Funds' audit of Alite for the 2016-19 period, stating that the audit conflated employees' incentive pay with their number of hours worked.  (Malgieri Reply Dec. ¶ 17.)  He also points to errors in the Funds' estimated audit from 2019 to present, asserting that the Funds failed to credit Alite for payments made to the Funds, and annexes supporting documentation.  (<u>Id.</u> ¶¶ 30-33 & Ex. C.)  On the issue of Alite Floor's alter-ego status, Malgieri states that Alite and Alite Floor do not share a common address, employees or customers, and have not worked on common projects.  (<u>Id.</u> ¶¶ 58, 60-62.)  Malgieri states that he is not an owner or manager of Alite Floor, which he believes was formed by his now-deceased former business partner.  (<u>Id.</u> ¶ 56.)  The Court concludes that defendants have come forward with defenses and some supporting documentation sufficient to weigh in favor of vacating default.

On the issue of prejudice, the Funds point principally to the delay and frustration caused by defendants' non-appearance and the failure of Alite to make full contributions in the period predating the commencement of this action.  As noted, delay alone does not demonstrate

prejudice.  <u>Green</u>, 420 F.3d at 110.  Defendants filed this motion less than two months after default judgment was entered, and the prejudice caused by any delay is marginal.  It also appears that the Funds have already obtained some discovery into Alite's financial records in their effort to enforce judgment.  (Harras Dec. Exs. E-J.)

The Funds also point to withdrawals made from Alite's operating accounts and the closure of a Chase bank account, which they argue are indicative of an attempt to frustrate enforcement of the judgment.  As described by the Funds, in July 2022, after being served with the judgment, Alite closed its operating account at Chase Bank, and separately, during March 2022, withdrew $1.3 million out of $1.4 million in available funds.  (Harras Dec. ¶¶ 13-15 & Exs. G-I.)  The Funds assert that they would be prejudiced by vacatur because Alite is attempting to frustrate enforcement of the judgment.  (Opp. Mem. at 22.)

In his reply declaration, Malgieri states that Chase unilaterally closed Alite's account following a derogatory credit report, and that Alite did not close the account, let alone do so in an attempt to frustrate judgment.  (Malgieri Reply Dec. ¶¶ 5-6.)  Separately the March 2022 statement for Alite's account reflects an opening balance of $743,956.71 and a closing balance of $62,040.11.  (Harras Dec. Ex. I.)  That month, four deposits were made to the account totaling $721,616.22, while 104 withdrawals were made in the aggregate total amount of approximately $1.4 million.  (Harras Dec. Ex. I.)  Malgieri explains that the moneys from the account were primarily withdrawn to pay creditors, including a $538,044.66 judgment that Alite owed to a creditor named Feldman Lumber.  (Malgieri Reply Dec. ¶ 7 & Ex. 2; Harras Dec. Ex. I.)  The recipients of most withdrawals are not identified, although some withdrawals reflect what appear to be routine payments to Home Depot, Verizon and an entity called Paychex.  (Harras Dec. Ex. I.)  The account's daily ending balance varied throughout the month of March.  (<u>Id.</u>)  Resolving

all doubts in favor of defendants as the movants, <u>Green</u>, 420 F.3d at 104, Malgieri's explanations, when viewed alongside the bank statements, credibly explain the withdrawals of March 2022 and account's closure by Chase in July 2022, and support the conclusion that the Funds would not be prejudiced by vacatur.

Nothing in this Court's Order vacating the default impairs or impedes any remedy available to the Fund, including a fraudulent conveyance claim.

CONCLUSION.

Defendants' motion to vacate the certificates of default and the entry of default judgment is GRANTED. The Clerk is directed to terminate the motion and the amended motion, and to re-open the case. (Docket # 30, 35.)

There will be an initial pretrial conference on November 4, 2022 at 12 p.m. The conference will proceed telephonically. Call-in information is: Dial-In No.: 1-888-363-4749, Access Code: 3667981#. The parties are directed to confer on a Case Management Plan (the "Plan") in accordance with Rule 26(f) of the Federal Rules of Civil Procedure. The outline of a Plan may be found on the Court's website: https://nysd.uscourts.gov/hon-p-kevin-castel.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 25, 2022

- 7 -